118 P.3d 645

STATE of Hawai'i, Plaintiff–
Appellee–Respondent,

v.

Gerven SORINO, Defendant–
Appellant–Petitioner.

No. 26009.

Supreme Court of Hawai'i.

Aug. 17, 2005.

Cynthia A. Kagiwada, on the application, for defendant-appellant-petitioner Gerven Sorino.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

On July 28, 2005, the defendant-appellant-petitioner Gerven Sorino filed an application for a writ of certiorari, requesting that this court review the Intermediate Court of Appeal's (ICA's) published opinion [hereinafter, "the ICA's opinion"] filed on June 29, 2005, affirming the July 2, 2003 order of the circuit court of the first circuit, the Honorable Sandra A. Simms presiding, denying Sorino's April 8, 2003 motion (1) to set aside the August 11, 1998 judgment, guilty conviction, and probation sentence, (2) to allow defendant to withdraw his plea of no contest, and (3) to set the case for trial [hereinafter, "motion to set aside"] [collectively hereinafter, "the order denying Sorino's motion to set aside"]. *See State v. Sorino,* 108 Hawai'i 115, 117 P.3d 847 (Hawai'i App. 2005). On August 3, 2005, we granted certiorari.

In his application, Sorino contends (1) that "the majority of the [ICA] gravely erred when it affirmed the circuit court's order denying ... Sorino's motion to [set aside] where the circuit court failed to comply with [Hawai'i Revised Statutes (HRS)] § 802E–2 [(1993)[1]] so that withdrawal of ... Sorino's plea was mandatory pursuant to HRS

---

1. HRS § 802E–2 provides:

**Court advisement concerning alien status required.** Prior to acceptance of a plea of guilty or

§ 802E–3 [ (1993) ]"; [2] and (2) that "the majority opinion of the [ICA] is obviously inconsistent with this court's decision in *State v. Nguyen* [,]" 81 Hawai'i 279, 916 P.2d 689 (1996).

As discussed *infra* in section III, we granted certiorari because the ICA's opinion suffers from a "grave error[ ] of law" and is "inconsisten[t]" both with *Nguyen* and its own reasoning. We therefore hold, consonant with our reasoning in *Nguyen*, that Sorino is entitled to the protections of HRS §§ 802E–2 and 802E–3, as well as Hawai'i Rules of Penal Procedure (HRPP) Rule 11(c)(5) (1998).[3] Accordingly, we (1) reverse the ICA's opinion, (2) vacate the July 2, 2003 circuit court order denying Sorino's April 8, 2003 motion to set aside, and, (3) pursuant to HRS §§ 802E–2 and 802E–3, remand this matter with instructions to the circuit court (a) to vacate the judgment, (b) to permit Sorino to withdraw his no contest plea and enter a plea of not guilty, and (c) to conduct further proceedings consistent with this opinion.

## I.  *BACKGROUND*

The following facts, adduced before the circuit court and recited by the ICA in its lead opinion, are undisputed in Sorino's application:

On April 13, 1998, Sorino pled no contest to Terroristic Threatening in the First Degree in violation of HRS § 707–716(1)(d) (1993).[4] The circuit court sentenced Sorino to five years of probation, and Judgment was entered on August 11, 1998. On July 9, 2002, the circuit court revoked Sorino's probation, sentenced him to five years of imprisonment, and filed its Order of Resentencing/Revocation of Probation.

On April 8, 2003, Sorino filed the Motion to Withdraw Plea, asking the circuit court to allow him to withdraw his no contest plea and to set his case for trial "on the grounds: 1) that the Court did not advise Defendant of his immigration status prior to accepting Defendant's plea of no contest and 2) manifest injustice." Sorino argued that the circuit court had failed to advise him pursuant to HRS § 802E–2, [*see supra* note 1,] and, therefore, pursuant to HRS § 802E–3, [*see supra* note 2,] the circuit court was mandated to vacate the Judgment, permit him to withdraw his plea of no contest and enter a plea of not guilty,

---

*nolo contendere* to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:

If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section.

**2.**  HRS § 802E–3 provides:

**Failure to advise; vacation of judgment.** If the court fails to advise the defendant as required by section 802E–2 and the defendant shows that conviction of the offense to which the defendant pleaded guilty or *nolo contendere* may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, on defendant's motion, the court shall vacate the judgment and permit the defendant to withdraw the plea of guilty or *nolo contendere,* and enter a plea of not guilty. Ab-

sent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement.

**3.**  HRPP Rule 11(c) provides in relevant part as follows:

(c) *Advice to defendant.* The court shall not accept a plea of guilty or *nolo contendere* without first addressing the defendant personally in open court and determining that he understands the following:

. . . .

(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

**4.**  HRS § 707–716 provides in relevant part:

**§ 707–716  Terroristic threatening in the first degree.** (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

. . . .

(d) With the use of a dangerous instrument.

(2) Terroristic threatening in the first degree is a class C felony.

and set the case for trial. Attached to the motion was the April 13, 1998 transcript of proceedings at which Sorino had entered his no contest plea and a copy of a "Notice to Appear In removal proceedings under section 240 of the Immigration and Nationality Act" (Notice) from the Immigration and Naturalization Service (INS) (served on Sorino on September 19, 2002). The Notice stated that Sorino was deportable because he was not a citizen or national of the United States and because he had been convicted of Terroristic Threatening in the First Degree (committed against a person with whom he shared a child in common) on August 11, 1998 in the circuit court. The Notice further stated that Sorino was subject to removal from the United States pursuant to § 237(a)(2)(E)(i) of the Immigration and Naturalization Act, as amended, because Sorino was an alien who, after entry, had been convicted of "a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment."

On May 28, 2003, the State filed a memorandum opposing the Motion to Withdraw Plea, arguing that Sorino did "not hold an absolute right to withdraw his plea" and there had been no showing of "manifest injustice" entitling Sorino to withdraw his plea. The State argued that the record showed Sorino had been advised by the circuit court and fully understood the immigration consequences of his plea.

On June 2, 2003, the circuit court held a hearing on the Motion to Withdraw Plea. The circuit court issued its July 2, 2003 order denying the Motion to Withdraw Plea based on the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On March 20, 1998, Defendant's counsel requested a misdemeanor charge for his client because of "immigration consequences."

2. On April 3, 1998, the Court, by way of a[p]re-trial Conference, advised Defendant's counsel to contact the Immigration and Naturalization Service regarding immigration consequences for his client.

3. On April 13, 1998, Defendant was warned on the record that his plea could have a bearing on his relationship with the Immigration and Naturalization Service; and based upon a colloquy with the court, Defendant was sufficiently advised and fully understood the potential immigration consequences of his plea.

4. On April 13, 1998, Defendant signed a Change of Plea form which warned him that if he was not a citizen of the United States, a conviction might have the consequence of deportation.

### CONCLUSIONS OF LAW

1. The Court is not required to resort to a ritualistic litany when advising a Defendant of the consequences of his plea. *State v. Cornelio*, 68 Haw. 644, 727 P.2d 1125 (1986).

2. The Court may use additional sources other than the Defendant to find a sufficient basis for his plea. *State v. Tachibana*, 67 Haw. 573, 698 P.2d 287 (1985).

3. Based upon the Findings of Fact above, Defendant has failed to make a showing of manifest injustice and therefore cannot withdraw his plea. *State v. Adams*, 76 Hawai'i 408, 879 P.2d 513 (1994).

ICA's lead opinion, at 116–117, 117 P.3d 847

The ICA further noted that, at the April 13, 1998 plea hearing,

[r]ather than reciting the advisement contained in HRPP Rule 11(c)(5)[, *see supra* note 3,] and HRS § 802E–2, the circuit court stated:

[THE COURT:] And then, lastly, you do not have to tell me if you are or are not, but I'm required to tell you that if you're not a citizen, this plea may have a bearing on whatever relationship you have with the Immigration and Naturalization Service. Do you understand that?

[Sorino] Yes, Your Honor.

*Id.*, at 119, 117 P.3d at 851. It is noteworthy (1) that the circuit court also asked Sorino (a) whether he had read the change of plea form in its entirety, (b) whether he understood the form that he had signed, and (c) whether he had any difficulty understanding and speaking English and (2) that Sorino answered questions (a) and (b) in the affirmative and responded that he could understand and speak English.

On August 1, 2003, Sorino timely filed a notice of appeal from the July 2, 2003 order denying his motion to set aside. As recited by the ICA's lead opinion,

> [o]n appeal, Sorino contend[ed] (1) [that] the circuit court erred when it concluded it had complied with the requirement of Hawai'i Revised Statutes (HRS) § 802E–2 (1993) that it administer the statutory advisement on the record to Sorino; (2) [that] the circuit court erred when it denied [his motion to set aside] ... because a grant of the motion was mandatory, pursuant to HRS § 802E–3 (1993), where the court failed to comply with HRS § 802E–2; and (3) [that] Sorino was denied effective assistance of counsel with respect to the [motion to set aside] ... because his counsel failed to provide any legal authority other than HRS §§ 802E–2 and 802E–3 and his counsel argued that the circuit court should apply the manifest injustice standard.

ICA's lead opinion, 108 Hawai'i at 116, 117 P.3d at 848.

On June 29, 2005, the ICA issued its published opinion in the present matter. Writing for the majority, the Honorable Daniel R. Foley noted (1) that the circuit court failed to recite the advisement required by HRPP Rule 11(c)(5) and HRS § 802E–2, *id.*, at 118, 117 P.3d at 850, and (2) that "[HRPP] Rule 11(c)(5) adopts the advisement contained in HRS § 802E–2, making it clear that the court shall address the defendant personally in open court and determine that the defendant understands the advisement contained in [HRPP] Rule 11(c)(5) and HRS § 802E–

2." *Id.* (citing *Nguyen,* 81 Hawai'i at 288, 916 P.2d at 698). Judge Foley reasoned and held in relevant part:

> Sorino did ... sign a plea form that contained the required advisement. In answer to the circuit court's questions, Sorino answered that he had read the plea form with his lawyer, understood it, and had no questions about the form. Sorino acknowledged that he understood and spoke English.

> In *Nguyen,* the Hawai'i Supreme Court discussed the relationship among HRS §§ 802E–2 and 802E–3 and HRPP Rules 11(c)(5) and 32(d) [ (1998) ].[5] Although *Nguyen* concerned a withdrawal of plea pursuant to HRPP Rule 32(d) prior to the effective date of HRS Chapter 802E, the Hawai'i Supreme Court, in quoting HRS § 802E–3, indicated that HRS § 802E–3, not HRPP 32(d), would govern the withdrawal of a plea based on a court's failure to comply with the advisement required under HRS § 802E–2:

>> Nevertheless, Nguyen correctly asserts that a statute, HRS Chapter 802E, currently requires courts, prior to accepting a plea of *nolo contendere,* to advise defendants that, if they are not citizens of the United States, their convictions "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." HRS § 802E–2 (1993). Effective September 2, 1988, an amendment to HRPP Rule 11(c)(5) also requires courts to determine that such defendants understand the collateral consequence of possible deportation. "If the court fails to advise the defendant as required by section 802E–2 and the defendant shows that conviction of the offense to which the defendant pleaded ... *nolo contendere* may have the consequence for the defendant of deportation, ... the court shall vacate the judgment." HRS § 802E–3 (1993).

---

**5.** HRPP Rule 32(d) provides:

(d) *Withdrawal of plea of guilty.* A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is impose or

imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

*Nguyen,* 81 Hawai'i at 288–89, 916 P.2d at 698–99 (brackets and footnotes omitted).

The circuit court therefore erred as a matter of law in considering Sorino's Motion to Withdraw Plea under HRPP Rule 32(d) as opposed to HRS § 802E–3.

*Under HRS § 802E–3, the circuit court was required to grant Sorino's Motion to Withdraw Plea if the court had failed to advise Sorino as required by HRS § 802E–2. Under HRPP Rule 11(c)(5), which adopted the advisement of HRS § 802E–2, that advisement was to be done by the circuit court addressing Sorino personally in open court and determining he understood that if he was "not a citizen of the United States, a conviction of the offense for which he [had] been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."*

*Although the circuit court did not recite this advisement orally to Sorino, Sorino did state in open court, in response to an inquiry from the circuit court, that he had read this advisement with his attorney and understood it. Although the circuit court applied the wrong standard in denying Sorino's Motion to Withdraw Plea, under the standard set forth in HRS § 802E–3, Sorino's motion should have been denied.*

Sorino's argument that his trial counsel was ineffective in the filing and arguing of Sorino's [motion to set aside] is without merit.

*Id.,* at 120, 117 P.3d at 852 (emphases added). Based on the foregoing, the ICA affirmed the circuit court's July 2, 2003 order denying Sorino's motion to set aside. *Id.* at 120, 117 P.3d at 852.

The Honorable Craig H. Nakamura concurred separately, "agree[ing] with Judge Foley's conclusion that the circuit court satisfied the requirements of [HRS] § 802E–2 and [HRPP] Rule 11(c)(5) in accepting [Sorino's] no contest plea[,]" but asserting that, insofar as "this conclusion disposes of Sorino's appeal regardless of whether the standard for plea withdrawal set forth in HRS § 802E–3 or in HRPP 32(d) applies," he

"would not reach the issue of which standard applies in Sorino's case." Judge Nakamura therefore "concur[red] in the result reached by Judge Foley and join[ed] in his conclusion that the circuit court's plea colloquy satisfied the requirements of HRS § 802E–2 and HRPP Rule 11(c)(5)[,]" but "express[ed] no opinion on the relationship between HRS § 802E–3 and HRPP Rule 32(d)."

The Honorable Corinne K.A. Watanabe, acting as Chief Judge of the ICA, concurred separately with and also dissented from Judge Foley's lead opinion. Judge Watanabe agreed with Judge Foley (1) that the circuit court "erred by considering … Sorino's [motion to set aside] … under [HRPP] Rule 32(d) instead of [HRS] § 802E–3[,]" (2) that "HRPP Rule 11(c)(5), which was adopted by the Hawai'i Supreme Court to implement HRS chapter 802E, 'mak[es] it clear that the court shall address the defendant personally in open court and determine that the defendant understands the advisement contained in [HRPP] Rule 11(c)(5) and HRS § 802E–2," and (3) that "the circuit court failed to 'recit[e] the advisement contained in HRPP Rule 11(c)(5) and HRS § 802E–2' to Sorino in open court." Concurring and dissenting opinion, 108 Hawai'i at 120, 117 P.3d at 852 (some brackets added and some in original). Nevertheless, Judge Watanabe "respectfully disagree[d] with the majority's conclusion that Sorino's motion was properly denied." *Id.*

Judge Watanabe explained, *inter alia* that, [i]n [her] view, the language of HRS § 802E–2 is plain and unambiguous. It mandated that the circuit court give a very explicit advisement to Sorino "on the record" before accepting his no-contest plea. The circuit court clearly did not recite the advisement to Sorino and, therefore, violated the terms of HRS § 802E–2.

The language of HRS § 802E–3 is also plain and unambiguous in setting forth the consequences that must follow if a court fails to give the statutory advisement....

Since the circuit court failed to give Sorino the statutory advisement required by HRS § 802E–2 and Sorino showed that his conviction had deportation consequences,

as evidenced by the deportation proceedings initiated against him by the Immigration and Naturalization Service on September 19, 2002, [Judge Watanabe] would conclude that HRS § 802E–3 required the circuit court to "vacate the judgment" and permit Sorino to withdraw his no-contest plea.

*Id.,* at 121, 117 P.3d at 853. Judge Watanabe also asserted that

> [t]he majority overlooks the circuit court's failure to comply with HRS § 802E–2 and HRPP Rule 11(c)(5) by relying on the fact that Sorino read the advisement on a preprinted written change of plea form. *This written advisement, however, did not satisfy HRS § 802E–2 because it was not made by "the court" and was not made "on the record." See HRS § 802E–2. Likewise, the written advisement did not satisfy HRPP Rule 11(c)(5) in that it was not made "personally in open court[.]"* See HRPP Rule 11(c)(5).

> An otherwise sufficient advisement contained in a written change of plea form does not meet the express requirements of HRS § 802E–2. *To hold otherwise would render meaningless the legislature's command that "the court shall administer the following advisement on the record to the defendant[.]"* HRS § 802E–2.

*Id.,* at 123, 117 P.3d at 855. Based, *inter alia,* on the foregoing reasons, Judge Watanabe stated that she would have held "that Sorino was entitled to the remedy provided by HRS § 802E–3." *Id.,* at 123, 117 P.3d at 855.

On July 28, 2005, Sorino timely filed his application for writ of certiorari.

## II. *STANDARD OF REVIEW*

Appeals from the ICA are governed by HRS § 602–59(b) (1993), which prescribes that

> an application for writ of certiorari shall tersely state its grounds which must include (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the

magnitude of such errors or inconsistencies dictating the need for further appeal.

*In re Jane Doe, Born on June 20, 1995,* 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001).

## III. *DISCUSSION*

As we have noted, Sorino contends in his application: (1) that "[t]he majority of the ICA gravely erred by affirming the circuit court's order denying the motion [to set aside] because the circuit court failed to comply with the plain, unambiguous and explicit meaning of HRS § 802E–2," *see supra* note 1; and (2) that "[t]he majority opinion of the ICA is also obviously inconsistent with this [c]ourt's decision in [*Nguyen* ]." We agree and further note that the ICA majority has reached a result that is inconsistent with its own reasoning.

"[T]he interpretation of a statute ... is a question of law reviewable *de novo.*" *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994). . . .

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> *When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.*

> . . . .

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brack-

ets and ellipsis points in original) (footnote omitted)....

*State v. Young*, 107 Hawai'i 36, 39–40, 109 P.3d 677, 680–81 (2005) (quoting *State v. Kaua*, 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–480 (2003) (quoting *State v. Rauch*, 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit*, 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker*, 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich*, 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))) (emphasis added).

The lynchpin of the ICA's lead opinion lies in the following reasoning: Notwithstanding that "the circuit court did *not* recite [the HRS § 802E–2] advisement orally to Sorino," because "Sorino did state in open court, in response to an inquiry from the circuit court, that he had read [the] advisement with his attorney and understood it," "under the standard set forth in HRS § 802E–3, [*see supra* note 2,] Sorino's motion [to set aside] should have been denied." ICA's lead opinion, at 120, 117 P.3d at 852 (emphasis added). The "standard set forth in HRS § 802E–3" mandates, however, that the circuit court either "advise the defendant as required by [HRS] section 802E–2" or "vacate the judgment and permit the defendant to withdraw the plea of ... *nolo contendere*, and enter a plea of not guilty." In that connection, the plain language of HRS § 802E–2 states that "*the [circuit] court shall administer the ... advisement on the record to the defendant*" (emphasis added), and, as noted *supra*, the

ICA's lead opinion concedes that the circuit court failed to recite the advisement to Sorino. Thus, it defies logic to hold that the circuit court's inquiry as to whether Sorino had read and understood the advisement somehow satisfied HRS § 802E–3 when HRS § 802E–3 requires compliance with HRS § 802E–2 (*i.e.*, the administration of the advisement on the record to Sorino).[6] Further to the foregoing, as we stated in *Nguyen*,

> HRS Chapter 802E[] currently requires courts, prior to accepting a plea of nolo contendere, to advise defendants that, if they are not citizens of the United States, their convictions "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." HRS § 802E–2.... "If the court fails to advise the defendant as required by section 802E–2 and the defendant shows that conviction of the offense to which the defendant pleaded ... nolo contendere may have the consequence[] for the defendant of deportation, ... the court shall vacate the judgment[.]" HRS § 802E–3....[7]

81 Hawai'i at 288–89, 916 P.2d at 698–99 (emphases added) (footnotes omitted).

The ICA's lead opinion therefore suffers from (1) a grave error of law—by way of its failure to apply the plain language of HRPP Rule 11(c)(5) and HRS §§ 802E–2 and 802E–3–and (2) obvious inconsistencies with (a) our decision in *Nguyen* and (b) the lead opinion's own reasoning. *In re Jane Doe, Born on June 20, 1995*, 95 Hawai'i at 189, 20 P.3d at 622. We hold, consonant with our reasoning in *Nguyen*, that Sorino is entitled to the

---

**6.** It is undisputed that, as noted in the ICA's lead opinion, at 121, 117 P.3d at 853, for purposes of HRS § 802E–3, Sorino's conviction of the offense terroristic threatening in the first degree "may have the consequence[] for [Sorino] ... of deportation...." HRS § 802E–3.

**7.** It is noteworthy that, in addition to characterizing the provisions of HRS §§ 802E–2 and 802E–3, *Nguyen* observed that "HRPP Rule 11(c)(5) *also* requires courts to determine that such defendants understand the collateral consequence of possible deportation." 81 Hawai'i at 288, 916 P.2d at 698 (emphasis added) (footnote

omitted). In other words, not only are courts required to administer the HRS § 802E–2 advisement to defendants, but courts must also ensure that such defendants understand the advisement. *Id.*

In the present matter, the circuit court failed to administer the HRS § 802E–2 advisement to Sorino. Thus, the circuit court's query as to whether Sorino had read and understood the change of plea form in its entirety failed to satisfy HRPP Rule 11(c)(5) because, per *Nguyen*, the recitation of the advisement prior to the circuit court's determination as to whether the defendant understands the advisement is required.

protections of HRS §§ 802E–2 and 802E–3, as well as HRPP Rule 11(c)(5).

### IV. *CONCLUSION*

In light of the foregoing analysis, we (1) reverse the ICA's opinion, (2) vacate the July 2, 2003 circuit court order denying Sorino's April 8, 2003 motion to set aside, and (3) pursuant to HRS § 802E–3, *see supra* note 2, remand this matter with instructions to the circuit court (a) to vacate the judgment, (b) to permit Sorino to withdraw his no contest plea and enter a plea of not guilty, and (c) to conduct further proceedings consistent with this opinion.

